No. 25-3149

IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

_____

Jennifer Kilnapp,

*Plaintiff-Appellee*

vs.

City of Cleveland, *et al.*,

*Defendants-Appellant*

_____

Appeal from the United States District Court
Northern District of Ohio, No. 1:22-cv-01225

_____

**Appellee Jennifer Kilnapp's Petition for Panel Rehearing**

_____

Matthew D. Besser (Ohio #0078071)
Cathleen M. Bolek (Ohio #0059884)
BOLEK BESSER GLESIUS LLC
Monarch Centre, Suite 302
5885 Landerbrook Drive
Cleveland, Ohio 44124
T 216.464.3004
F 866.542.0743
mbesser@bolekbesser.com
cbolek@bolekbesser.com

*Counsel for Plaintiff-Appellee*
*Jennifer Kilnapp*

# Table of contents

Table of authorities ............................................................... iii

Points of law warranting rehearing.......................................................1

I.    Because a Panel of this Court already held in this case that the law was clearly established, the law-of-the-case doctrine "precludes" this Panel from concluding otherwise on the same legal issue. .......................................................................2

    A.    In qualified immunity cases, this Court's precedent "dictates" that a subsequent panel "refrain from reconsidering" an original Panel's holding that the law was clearly established.................................................5

    B.    The decision undermines judicial economy, encourages piecemeal appeals to relitigate settled law, and leaves litigants unable to rely on qualified immunity holdings from this Court. ........................................................7

II.    The "dispositive" inquiry under the clearly established prong considers an officer's conduct based on facts known at the time. The Panel decision contradicts both that precedent and precedent that an officer is not entitled to qualified immunity merely based on uncertainty about which constitutional standard applies to that conduct..............................................................8

    A.    The Panel decision creates an intra-circuit split....................9

    B.    The Panel decision creates an inter-circuit split.................12

    C.    The Panel decision conflicts with the Supreme Court's command in qualified immunity cases to consider only an officer's conduct based on those "facts that were knowable" at the time of that conduct................................................13

III.    The decision fails to conduct the required "obvious case" analysis that applies in qualified immunity cases. ....................................15

IV. The Panel decision conflicts with precedent that qualified immunity is inappropriate where there is an unresolved question whether the officer had probable cause to use deadly force..........18

Conclusion .................................................................................19

Certificate of compliance...........................................................20

Certificate of service..................................................................20

# Table of authorities

*Agostini v. Felton*, 521 U.S. 203 (1997) ...................................................... 2

*Anderson v. Creighton*, 483 U.S. 635 (1987) .............................................. 14

*Bouggess v. Mattingly*, 482 F.3d 886 (6th Cir. 2007) ......................... 16, 17

*Brosseau v. Haugen*, 543 U.S. 194 (2004) .......................................... 14, 16

*Campbell v. Cheatham Cnty. Sheriff's Dept.*, 47 F.4th 468 (6th Cir. 2022) ................................................................................................. 17

*Claybrook v. Birchwell*, 199 F.3d 350 (6th Cir. 2000) ............................. 11

*Daunt v. Benson*, 999 F.3d 299 (6th Cir. 2021) .......................................... 3

*Dixie Fuel Co., LLC v. Director, Office of Workers' Comp. Programs*, 820 F.3d 833 (6th Cir. 2016) ....................................................................... 3

*Entek GRB, LLC v. Stull Ranches, LLC*, 840 F.3d 1239 (10th Cir. 2016) .................................................................................................................. 7

*Ermold v. Davis*, 130 F.4th 553 (6th Cir. 2025) ........................... 3, 5, 6, 7

*Gambrel v. Knox County*, 25 F.4th 391 (6th Cir. 2022) ........................... 17

*Guy v. Metropolitan Government of Nashville*, 687 Fed. Appx. 471 (6th Cir. 2017) ................................................................................................. 11

*Harris v. City of Circleville*, 583 F.3d 356 (6th Cir. 2009) ....................... 9

*Hart v. Michigan*, 138 F.4th 409 (6th Cir. 2025) ............................... 15, 18

*Hernandez v. Mesa*, 582 U.S. 548 (2017) ................................................. 12

*Hope v. Pelzer*, 536 U.S. 730 (2002) ........................................................ 16

*Hopper v. Phil Plummer*, 887 F.3d 744 (6th Cir. 2018) ......................... 10

*Howe v. City of Akron*, 801 F.3d 718 (6th Cir. 2015) ................................ 2

*Jacobs v. Alam*, 915 F.3d 1028 (6th Cir. 2019) ....................................... 18

*Jones v. Bottom*, 85 F.4th 805 (6th Cir. 2023) ...........................................6

*K.H. v. Morgan*, 914 F.2d 846 (7th Cir. 1990) .........................................16

*Kanuszewski v. Mich. Dep't of Health & Hum. Servs.*, 141 F.4th 796 (6th Cir. 2025) .................................................................................4

*Kilnapp v. City of Cleveland*, 2023 WL 4678994 (6th Cir. July 21, 2023)2

*Kilnapp v. City of Cleveland*, 2026 WL 457597 (6th Cir. Feb. 18, 2026) 4, 12

*Kingsley v. Hendrickson*, 576 U.S. 389 (2015) .......................................10

*Kisela v. Hughes*, 584 U.S. 100 (2018) ....................................................16

*Messenger v. Anderson*, 225 U.S. 436 (1912) ...........................................2

*Moody v. Michigan Gaming Control Bd.*, 871 F.3d 420 (6th Cir. 2017) .3, 5

*Moore v. Oakland Cnty., Michigan*, 126 F.4th 1163 (6th Cir. 2025)......17

*Musacchio v. United States*, 577 U.S. 237 (2016) ......................................6

*Randolph v. Macauley*, 155 F.4th 859 (6th Cir. 2025) ............................3

*Rivas-Villegas v. Cortesluna*, 595 U.S. 1 (2021) ....................................16

*Rodriguez v. Passinault*, 637 F.3d 675 (6th Cir. 2011)...........................11

*Safford Unified School Dist. No. 1 v. Redding*, 557 U.S. 364 (2009)16, 17

*Sample v. Bailey*, 409 F.3d 689 (6th Cir. 2005) .....................................17

*Saucier v. Katz*, 533 U.S. 194 (2001)................................................. 10, 14

*Tennessee v. Garner*, 471 U.S. 1 (1985)..................................................16

*Torres v. Madrid*, 60 F.4th 596 (10th Cir. 2023) .............................. 12, 13

*White v. Pauly,* 580 U.S. 73 (2017)..........................................................13

iv

## <u>Points of law warranting rehearing</u>

The Panel opinion overlooks or misapprehends the following points of

law warranting rehearing:

1.  The law-of-the-case doctrine precludes the Panel from revisiting (let alone reversing) the original Panel's holding on the "same issue" in the "same case" that the law here was clearly established. The Panel opinion disregarding the doctrine conflicts with this Court's precedent in qualified-immunity cases, specifically *Ermold v.* Davis*, Moody v. Michigan Gaming Control Board*, and *Jones v. Bottom*.

2.  The Panel decision contradicts in-Circuit, sister-Circuit, and Supreme Court precedent in holding that the law was not clearly established based solely on uncertainty about whether the Fourth or Fourteenth Amendment applies to the officer's conduct. It compounds that contradiction by hinging qualified immunity on a fact not known to Gannon at the time of his conduct, because such facts are "not relevant" in the "clearly established" analysis.

3.  The Panel decision is incomplete and conflicts with Supreme Court and Sixth Circuit precedent—including *Hope v. Pelzer*, *Brosseau v. Haugen*, and *Bouggess v. Mattingly*—because it fails to address whether this is an "obvious case" in which any reasonable officer would have understood that Gannon's use of deadly force was constitutionally impermissible.

4.  The Panel decision conflicts with this Court's longstanding precedent that qualified immunity is inappropriate where there is a question whether an officer had probable cause to use deadly force.

**I.** **Because a Panel of this Court already held in this case that the law was clearly established, the law-of-the-case doctrine "precludes" this Panel from concluding otherwise on the same legal issue.**

The Panel's decision contravenes the law-of-the-case doctrine. The original Panel already ruled on the discrete legal question of whether the law in this case was clearly established. It held in no uncertain terms: **"In this case, there is no doubt that the law is clearly established."** *Kilnapp v. City of Cleveland*, 2023 WL 4678994, *6 (6th Cir. July 21, 2023) (emphasis added).[1] By not only revisiting but also overruling the original Panel on that legal issue, the Panel opinion defies binding precedent.

Under the law-of-the-case doctrine, "a court should not reopen issues decided in earlier stages of the same litigation." *Agostini v. Felton*, 521 U.S. 203, 236 (1997) (*citing Messenger v. Anderson*, 225 U.S. 436, 444 (1912)). The doctrine's purpose "is to ensure that 'the *same* issue presented a second time in the *same case* in the *same court* should lead to the *same result*." *Howe v. City of Akron*, 801 F.3d 718, 739 (6th Cir. 2015) (emphasis in original). Within this Circuit, **"the law-of-the-**

_____

[1] Gannon sought rehearing and rehearing *en banc*, both of which were denied.

**case doctrine precludes reconsideration of issues decided at an earlier stage of the case.”** *Randolph v. Macauley*, 155 F.4th 859, 867–68 (6th Cir. 2025) (Bush, J.) (emphasis added) (*citing Daunt v. Benson*, 999 F.3d 299, 308 (6th Cir. 2021)); *see, e.g., Moody v. Michigan Gaming Control Bd.*, 871 F.3d 420, 426 (6th Cir. 2017) (Moore, J.); *Dixie Fuel Co., LLC v. Director, Office of Workers' Comp. Programs*, 820 F.3d 833, 843 (6th Cir. 2016).

Only in “exceptional circumstances” may a panel of this Court “depart from a prior ruling” by an earlier panel in the same case. *Daunt*, 999 F.3d at 308. The Court recognizes only three such circumstances that “warrant reconsideration of a previously decided issue.” *Id.* They are: “(1) where substantially different evidence is discovered between appeals, (2) where the controlling legal precedent changes between appeals, and (3) where a decision is clearly erroneous and would work a manifest injustice.” *Ermold v. Davis*, 130 F.4th 553, 559 (6th Cir. 2025) (internal quotations omitted). The decision cites these exceptions but omits analysis or discussion of whether they apply to the “clearly

established" prong. *See Kilnapp v. City of Cleveland*, 2026 WL 457597, *4 (6th Cir. Feb. 18, 2026).[2] None do.

First, whether the law was clearly established here is a legal question. It turns on no factual development from discovery. Even if it did, when the facts are viewed in the light most favorable to Kilnapp, nothing about them undermines the original Panel's legal holding. Nor did any controlling precedent change between the two appeals. Finally, the original Panel's holding was not clearly erroneous, let alone the kind of error that would work a manifest injustice. To the contrary, both Panels concluded that Gannon seized Kilnapp, albeit using slightly (but not materially) different analyses. If anything, the manifest injustice arises from overruling the original Panel.

As this Court recently explained, when a panel holds at the pleadings stage that the law is clearly established, parties then litigate "in reliance on our holding" that if the plaintiff proves the allegations in

---

[2] It is true in principle as the decision states that the doctrine "is not an inexorable command." *See Kanuszewski v. Mich. Dep't of Health & Hum. Servs.*, 141 F.4th 796, 803 (6th Cir. 2025). But the case cited for that proposition reflects only that departure is permissible where the requisite "exceptional circumstances" exist—for instance there, where facts developed in discovery affect the legal analysis used at the pleadings stage (i.e., the first exception).

the complaint, the defendant "would not be entitled to qualified immunity." *Ermold*, 130 F.4th at 559. When a litigant relies on that holding in terms of time, expense, and risk-evaluation, it is "unfair to reverse course" and tell the plaintiff that in reality the "case was doomed from the start." *Id*. The "law-of-the-case doctrine exists precisely to prevent that sort of extended game of litigation whack-a-mole." *Id*. (internal quotation omitted). The doctrine precludes this Panel from reversing course on the "clearly established" prong, a legal issue the original Panel already decided in this case.

A.   *In qualified immunity cases, this Court's precedent "dictates" that a subsequent panel "refrain from reconsidering" an original Panel's holding that the law was clearly established.*

The Panel decision conflicts with this Court's precedent applying the law-of-the-case doctrine specifically in qualified immunity cases. In this Court, when a prior panel holds that the law at issue was clearly established, "the law-of-the-case doctrine **dictates that [the subsequent panel] refrain from reconsidering**" that holding. *Ermold*, 130 F.4th at 559. The Court has held as much repeatedly, refusing to "revisit our prior holding that the right at issue was clearly established" absent "exceptional circumstances." *Moody*, 871 F.3d at

5

426. Adherence to a prior panel's holding is required even if the subsequent panel believes the original holding rested on "shaky underpinnings." *Jones v. Bottom*, 85 F.4th 805, 810–11 (6th Cir. 2023).

The Court's recent decision in *Ermold v. Davis* is indistinguishable and binding, and the Panel decision cannot be squared with it. Over three separate appeals, the defendant in *Ermold* argued she was entitled to qualified immunity because the law was not clearly established. *Ermold*, 130 F.4th at 558. In the first two appeals, the Court held otherwise. *Id*. at 558–60. When the defendant made the same argument in the third, the Court refused to consider it, holding the law-of-the-case doctrine "requires consistency … between decisions issued by the same court." *Id*. at 560. More than a mere jurisprudential suggestion, the Court held that the doctrine **"hold[s] a circuit court to 'a ruling that it made in a prior appeal in the same case.'"** *Id*. at 559 (*quoting Musacchio v. United States*, 577 U.S. 237, 245 (2016) (emphasis added)). Thus, absent one of the three delineated exceptional circumstances, a court cannot "reconsider a legal issue decided by a prior panel in the same case." *Ermold*, 130 F.4th at 559.

This case is indistinguishable from *Ermold*, *Moody v. Michigan Gaming Control Board*, and *Jones v. Bottom*. Precedent "dictates" that the Panel "refrain" from revisiting the original Panel's legal conclusion that the law in this case was clearly established. By doing so, the decision irreconcilably conflicts with that precedent.

B.    *The decision undermines judicial economy, encourages piecemeal appeals to relitigate settled law, and leaves litigants unable to rely on qualified immunity holdings from this Court.*

The law-of-the-case doctrine exists for good reason and disregarding it here has broader implications. As *Ermold* explains, without it, "'an adverse judicial decision would become little more than an invitation to take a mulligan, encouraging lawyers and litigants alike to believe that if at first you don't succeed, just try again.'" *Ermold*, 130 F.4th at 559 (*quoting Entek GRB, LLC v. Stull Ranches, LLC*, 840 F.3d 1239, 1240 (10th Cir. 2016) (Gorsuch, J.)). That is an especially pernicious risk in qualified immunity cases, where multiple appeals are common. Though defendants have that right generally, qualified immunity does not bestow upon them a special right to take a second bite at the apple on an otherwise-settled pure question of law.

If allowed to stand, the Panel decision would encourage every defendant who loses their appeal at the pleadings stage to reargue on a subsequent appeal every legal holding the original panel made. It renders those decisions little more than advisory, sending the message that all legal questions—even those untethered to factual development in discovery—will be up for grabs once again. Rather than furthering the efficient resolution of disputes, it incentivizes prolonging them in the hope a later panel will reach a different conclusion on previously decided questions of law. At the same time, it deprives litigants of the ability to fairly assess their legal risk, as a later panel might decide to apply a different legal rule to the case than the prior one held would apply. To change those rules mid-case is to pull the rug out from under the litigants. The law-of-the-case doctrine exists to prevent that. The Panel erred by disregarding the doctrine here.

II. **The "dispositive" inquiry under the clearly established prong considers an officer's conduct based on facts known at the time. The Panel decision contradicts both that precedent and precedent that an officer is not entitled to qualified immunity merely based on uncertainty about which constitutional standard applies to that conduct.**

The Panel decision also runs afoul of precedent from this Circuit, other Circuits, and the Supreme Court by holding that an officer is

entitled to qualified immunity simply because there was uncertainty whether the Fourth Amendment or another constitutional standard applies to their conduct. Binding precedent holds to the contrary. Rather, the dispositive inquiry is whether the officer's conduct was reasonable based on the circumstances known at the time of the act. The opinion compounds the error by basing its analysis on the identity of the ultimate victim of Gannon's conduct, a fact he did not know when he pulled the trigger.

## A.     *The Panel decision creates an intra-circuit split.*

At the start, the decision cannot be squared with this Court's precedent that a defendant is not entitled to qualified immunity merely because, at the time he acted, there was legal debate—not about the reasonableness of his conduct, but about the precise formulation of the constitutional claim arising out of that conduct.

Controlling on this point is the Court's decision in *Harris v. City of Circleville*, 583 F.3d 356 (6th Cir. 2009). Like this case, *Harris* involved a claim of excessive force. Like this case, the defendants "contend[ed] that the law was not clearly established because the law was unclear about what standard applies to Harris's excessive force claims (i.e., the

Fourth or Fourteenth Amendment)." *Id.* at 367. But unlike this case,

*Harris* explicitly rejected that argument "because even if there were

some lingering ambiguity as to whether the Fourth or the Fourteenth

Amendment applies in this precise context, the 'legal norms' underlying

Harris's claims nevertheless were clearly established." *Id.* (internal

quotation omitted). So too here.

Consider as well *Hopper v. Phil Plummer*, 887 F.3d 744 (6th Cir.

2018), in which the defendants argued the law was not clearly

established "because the incident in question occurred before the

Supreme Court made it clear that the standard of liability applicable to

Fourteenth Amendment excessive-force claims is purely an objective

one." *Id.* at 755 (*citing Kingsley v. Hendrickson*, 576 U.S. 389 (2015)).

This Court "rejected" that argument, as **"a defendant is not entitled

to qualified immunity simply because the courts have not

agreed upon the precise formulation of the [applicable]

standard."** *Id.* at 755–56 (emphasis added). The Court instead

reaffirmed that "the relevant question under the clearly established

prong is whether defendants had notice 'that [their] conduct was

unlawful in the situation [they] confronted.'" *Id.* at 756 (*quoting Saucier*

*v. Katz*, 533 U.S. 194, 202 (2001)). The Court held the same thing in

*Guy v. Metropolitan Government of Nashville*, 687 Fed. Appx. 471, 475–76 (6th Cir. 2017).

Finally, there's *Rodriguez v. Passinault*, 637 F.3d 675, 680–83 (6th Cir. 2011). The Court in that case extensively analyzed whether there was a seizure when an officer fired at a vehicle in which the plaintiff was riding. Going so far as to distinguish *Claybrook v. Birchwell*, 199 F.3d 350 (6th Cir. 2000), the Court held a seizure-by-control occurred. *Rodriguez*, 637 F.3d at 683. Yet despite the uncertainty about the threshold seizure question, it nonetheless held qualified immunity was inappropriate because there was a genuine question of fact whether the officer reasonably used deadly force. *Id.* at 689.

The Panel opinion cannot be reconciled with these cases. By grounding its "clearly established" holding in uncertainty about the technical legal question of whether Kilnapp was "seized" for purposes of the Fourth Amendment, the decision does just what this Court's precedent forbids. The Panel should grant rehearing and deny qualified immunity to maintain uniformity of the Circuit's decisions.

11

*B.*     *The Panel decision creates an inter-circuit split.*

The Panel decision also creates a split with the Tenth Circuit's decision in *Torres v. Madrid*, 60 F.4th 596 (10th Cir. 2023). After remand from the Supreme Court, the defendants there made the same argument Gannon makes here: that he is entitled to qualified immunity because at the time of the shooting "it was not clearly established … (indeed, it was established by the Supreme Court only on its review of this very case) that the Fourth Amendment" applies. *Id.* at 603. But the Tenth Circuit *rejected* that argument. Quoting the Supreme Court in *Hernandez v. Mesa*, the Circuit recognized that the analysis in qualified immunity cases is "'limited to the facts that were knowable to [Defendants] at the time they engaged in the conduct in question.'" *Id.* (*quoting* 582 U.S. 548, 554 (2017)). Thus, that the defendant officer did not know when he shot the plaintiff that she would escape was "not relevant" to whether he was entitled to qualified immunity. *Id.*

That holding is squarely at odds with the Panel's holding that the law was not clearly established because *Torres* was decided after Gannon shot Kilnapp. *See Kilnapp*, 2026 WL 457597, at \*11. The chronology is true enough, but like the fact that the plaintiff in *Torres*

would escape after being shot, the actual recipient of Gannon's bullet was a "fact unknown to [the officer] as [he] fired…." *See Torres*, 60 F.4th at 603. The Panel opinion reaches the exact opposite holding as did the Tenth Circuit. The Tenth Circuit got it right.

C.  *The Panel decision conflicts with the Supreme Court's command in qualified immunity cases to consider only an officer's conduct based on those "facts that were knowable" at the time of that conduct.*

As the Tenth Circuit's decision shows, the Panel's analysis departs from Supreme Court precedent. *Hernandez v. Mesa* makes clear that entitlement to qualified immunity is determined solely on "'the facts that were knowable to the defendant officers' at the time they engaged in the conduct in question." 582 U.S. at 554 (*quoting White v. Pauly,* 580 U.S. 73, 77 (2017)). "Facts an officer learns after the incident ends—whether those facts would support granting immunity or denying it—are not relevant." *Id*. In *Hernandez*, the unknown fact was the plaintiff's nationality, which bore on whether he had a Fourth Amendment claim. *Id*. at 554–55. But that fact had no bearing on the "'dispositive inquiry in determining whether a right is clearly established,'" which the Court explained "'is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he

13

confronted.'" *Id*. (*quoting Saucier,* 533 U.S. at 202). The unknown fact here—whom Gannon would actually shoot when he pulled the trigger— is irrelevant to whether a reasonable officer in his shoes would have understood his conduct in pulling it was unlawful to begin with.

*Hernandez* relied on a long line of qualified-immunity cases rejecting the reasoning the Panel endorses. The foremost of them is *Saucier*, where the Court held unambiguously: "The **relevant, dispositive inquiry** in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his **conduct** was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202 (emphasis added). Other decisions confirm the point, holding that the "focus is on whether the officer had fair notice that her conduct was unlawful…." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004); *see also Anderson v. Creighton*, 483 U.S. 635, 646 (1987) (the purpose of qualified immunity is to afford officials notice "when their conduct may give rise to liability"). This Court has faithfully applied that rule, holding that the "salient question" is whether a defendant had "'fair warning' that her conduct was unconstitutional." *E.g., Ouza v. City of Dearborn Hts.*, 969 F.3d 265, 276 (6th Cir. 2020). And in this Circuit,

"precedent makes clear that officers have fair warning that they may not use deadly force where the suspect poses no immediate threat to the officer and no threat to others in the area…." *Hart v. Michigan*, 138 F.4th 409, 423–24 (6th Cir. 2025) (internal quotation omitted) (abrogation on other grounds recognized in *Feagin v. Mansfield Police Dept.*, 155 F.4th 595, 610 (6th Cir. 2025)).

The Panel decision, however, changes the "dispositive" inquiry from fair notice about *conduct* to whether an officer understood the precise formulation of how the law might apply to unknown *effects* of that conduct. Rather than expecting officers to ask "Is it reasonable to pull the trigger in this circumstance?" the opinion expects them to ask "If I pull the trigger, is it a Fourth Amendment seizure if I hit someone unintended?" Under binding precedent, the proper question is the former, not the latter. The Panel opinion erred by applying the wrong legal standard to the "clearly established" prong.

III. **The decision fails to conduct the required "obvious case" analysis that applies in qualified immunity cases.**

By failing to consider whether this is an "obvious case," where any reasonable officer would understand Gannon was not permitted to use deadly force either when or how he used it, the Panel neglects binding

15

precedent. The decision is incomplete without that analysis and rehearing is warranted.

It is axiomatic that "officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). "[T]he Supreme Court has recognized that there are **obvious cases** in which an officer should have been on notice that his conduct violated constitutional rights, despite the generalized nature of that Court's pronouncements of constitutional standards." *Bouggess v. Mattingly*, 482 F.3d 886, 895 (6th Cir. 2007) (emphasis added). Where excessive force is concerned, the Court has consistently held that in an "**obvious case**," the rule governing the use of deadly force from *Tennessee v. Garner*, 471 U.S. 1 (1985), is sufficient to "clearly establish" the law, "**even without a body of relevant case law**." *Brosseau*, 543 U.S. at 199 (emphasis added); *accord Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 6 (2021)*; Kisela v. Hughes*, 584 U.S. 100, 105 (2018); *Hope*, 536 U.S. at 738. The reason why is itself obvious: "'[t]he easiest cases don't even arise.'" *Safford Unified School Dist. No. 1 v. Redding*, 557 U.S. 364, 377–78 (2009) (*quoting K.H. v. Morgan*, 914 F.2d 846, 851 (7th Cir. 1990) (Posner, J.)).

16

Even so, the "unconstitutionality of outrageous conduct obviously will be unconstitutional...." *Safford*, 557 U.S. at 377–78.

This Court adheres to the rule. "Our circuit and others have held that some cases can be so obvious under *Garner* and governing circuit precedent that officers should be presumed to have been aware that their conduct violated constitutional standards." *Bouggess*, 482 F.3d at 895; *see, e.g., Moore v. Oakland Cnty., Michigan*, 126 F.4th 1163, 1167–68 (6th Cir. 2025) (recognizing the general standards regarding use of force "clearly establish" the law for "obvious violations"); *Campbell v. Cheatham Cnty. Sheriff's Dept.*, 47 F.4th 468, 481 (6th Cir. 2022); *Gambrel v. Knox County*, 25 F.4th 391, 407 (6th Cir. 2022); *Sample v. Bailey*, 409 F.3d 689, 699 (6th Cir. 2005).

Yet the Panel's analysis omits this settled precedent. It neglects to consider whether this is an "obvious case." For the reasons explained in the merits brief, it is. Any reasonable officer knows they may not shoot without looking where they are shooting. And any reasonable officer knows that to do so without regard for who is in the line of fire, particularly when no suspect poses an immediate threat, is impermissible. That is all the "fair warning" that qualified immunity

17

requires. Surely it does not require a prior case from this Circuit where an officer did the same—and also shot an unintended victim in the process—to know such conduct is constitutionally impermissible. By failing to conduct this analysis, the decision conflicts with binding precedent.

**IV.    The Panel decision conflicts with precedent that qualified immunity is inappropriate where there is an unresolved question whether the officer had probable cause to use deadly force.**

This Court's longstanding precedent is that where there is a question whether an officer had the required probable cause to use deadly force, qualified immunity is not appropriate. "Our caselaw is replete with instances in which we have denied officers qualified immunity when the facts suggest—at least taking them in the light most favorable to the plaintiff—that the suspect did not pose a serious threat to the officer." *Jacobs v. Alam*, 915 F.3d 1028, 1041 (6th Cir. 2019) (collecting cases); *see, e.g., Hart*, 138 F.4th at 423–24 (internal quotation omitted). That question exists here. By granting Gannon qualified immunity without first determining whether he had probable cause to use deadly force, the decision conflicts with precedent. That aside, if Gannon had no right to use deadly force in the first place,

bestowing qualified immunity upon him because he was 'fortunate' enough to shoot the wrong person belies common sense. In any event, the decision is at a minimum incomplete because it omits this necessary step in the analysis.

## Conclusion

For the reasons stated above, the Panel should grant the petition, affirm the district court, and remand for further proceedings.

Respectfully submitted,

Matthew D. Besser (Ohio #0078071)
Cathleen M. Bolek (Ohio #0059884)
**BOLEK BESSER GLESIUS LLC**
Monarch Centre, Suite 302
5885 Landerbrook Drive
Cleveland, Ohio 44124
T 216.464.3004
F 866.542.0743
mbesser@bolekbesser.com

*Counsel for Plaintiff-Appellee*
*Jennifer Kilnapp*

## Certificate of compliance

This brief complies with the type-volume limitations of Fed. R. App. P. 40(d)(3)(A) because, excluding the parts of the brief exempted by Fed. R. App. P. 32(f), it has 3,792 words. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it was written using Microsoft Word in 14-point Century Schoolbook typeface, a proportionally spaced font.

*Counsel for Plaintiff-Appellee*
*Jennifer Kilnapp*

## Certificate of service

The undersigned hereby certifies that a copy of the foregoing was filed electronically this 4th day of March, 2026. Notice of the filing will be served by operation of the Court's electronic filing system on:

Michael J. Pike (MPike@clevelandohio.gov)
William Menzalora (WMenzalora@clevelandohio.gov)
James R. Russell, Jr. (jrussell2@clevelandohio.gov)
Affan Ali (aali2@clevelandohio.gov)

*Counsel for Plaintiff-Appellee*
*Jennifer Kilnapp*